IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
DELTA DIVISION

SHERWANDA HARRIS                                                          PLAINTIFF

v.                              CASE NO. 2:25-CV-00219-BSM

SOUTHLAND CASINO GAMING
& RACING                                                                  DEFENDANT

## ORDER

Sherwanda Harris's amended complaint [Doc. No. 8] must be screened. *See* 28 U.S.C. § 1915(e)(2); *In re Atlas Van Lines, Inc.*, 209 F.3d 1064, 1067 (8th Cir. 2000). She alleges that her former employer, Southland Casino Gaming & Racing (Southland) violated Title VII of the Civil Rights Act by discriminating and retaliating against her, and constructively discharging her because she sought to exercise her Christian faith. Amended Complaint, Doc. No. 8 at 3–4. Although unclear, it also appears that Harris is claiming that Southland violated the Americans with Disabilities Act. Harris's amended complaint [Doc. No. 8] is dismissed without prejudice for failure to state a claim.

To overcome dismissal, a complaint must set forth enough factual allegations to nudge it across the line from conceivable to plausible. *See Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 569–70 (2007); *see also Aschroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."). This standard applies whether a plaintiff is represented or is appearing *pro se*. *See Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985).

Harris alleges that Southland hired her as a dealer in May 2022. Doc. 8 at 10. During her employment, she was promoted to the position of floor supervisor. *Id.* Changes to shift assignments occurred in May 2024, and Harris was moved from working graveyard shifts to day-shifts. *Id.* The new schedule caused Harris to miss Sunday church services. *Id.* at 4 & 10. Unhappy with her new shift, Harris spoke with Director Kendra Shaffer and offered to secure "religious accommodation papers." *Id.* Shaffer responded that such papers would be refused, implying the shift schedule would not change. *Id.* When Harris questioned why Shaffer assigned Linda Brown to the graveyard shift, Shaffer stated Brown had more seniority than Harris. *Id.* Harris disputes this.

Harris was suspended without pay on August 2, 2024, while Southland investigated a questionable bet she approved. *Id.* She returned to work on August 9, 2024, but was not scheduled to work the following week. *Id.* Harris resigned on August 4, 2025, after she was suspended again, this time for poor attendance. Her resignation became effective on August 18, 2025. *Id.* at 22–23, 27. Her resignation letters explained that she had not been treated fairly and provided examples. First, no manager called to check on her on one occasion when she was sick. Second, her 2024 suspension was illegitimate. Third, nothing was "said or done" when she reported on one occasion that she refused to relieve a floor supervisor with missing chips. *Id.* On that occasion, the other employee was not suspended. *Id.* Fourth, Southland failed to accommodate her on one occasion when she was required to wear a medical boot. *Id.* Harris resigned because her employment at Southland "had become too much." *Id.* at 4.

As a preliminary matter, Harris's retaliation claim and her 2025 claims, including her ADA and constructive discharge claims, are dismissed because they have not been exhausted. This is true because Harris filed a charge of discrimination with the Equal Employment Opportunity Commission in August 2024. *Id*. at 10–11. That charge contained only her Title VII religious discrimination claim because she explained that she was "denied a religious accommodation and moved to the day shift because of my religion, Christian, and suspended without pay because of my religion, in violation of . . ." *Id.* Harris never amended her charge to include a retaliation claim or her 2025 claims. For this reason, only Harris's religious discrimination claim will be screened.

Southland cannot discriminate against Harris based on her religion, but to succeed on her claim, she has to show that she was treated differently than others who did not share her religious beliefs. 42 U.S.C. § 2000e-2(a)(1); *See e.g., Wilson v. Wal-Mart Store, Inc.*, 2006 WL 318828, *4-5 (E.D. Ark. 2006) (quoting *Wilson v. U.S. West Comm.*, 58 F.3d. 1337 (8th Cir. 1995)). To do this, she must show that Southland (1) had a work requirement that conflicted with Harris's bonafide religious belief; (2) she told Southland about her belief; and (3) she suffered adversely because of her refusal to comply with the work requirement. *Id.; see also Johnson v. Angelica Uniform Group, Inc.*, 762 F.2d 671, 673 (8th Cir. 1985). Harris has failed to meet this burden.

Liberally reading Harris's complaint, she has sufficiently pleaded that she is a Christian, was assigned to work on Sundays which resulted in her missing church, and that she had one conversation with a supervisor about her dissatisfaction with her shift. She has,

3

however, failed to plead a *prima facie* case of religious discrimination because she does not allege that she formally sought a religious exception or that non-Christian coworkers received better shift assignments than she received. At most, she points to a coworker named Linda who was not required to work on Sundays but she does not state that Linda is not a Christian. Moreover, Harris does not allege that she refused to comply with the schedule because of her faith. By all accounts, it appears that Harris continued to work undisturbed until she resigned in August 2025. Finally, although Harris claims that she was suspended in August 2024 due to her religious beliefs, she provides no factual allegations to support this claim.

IT IS SO ORDERED this 29th day of May, 2026.

_____
UNITED STATES DISTRICT JUDGE